IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

DERVIN ENRIQUE CHOURIO
HERRERA,

Petitioner,

vs.

PAMELA JO BONDI, in her official
capacity as Attorney General of the
United States, et al.,

Respondents.

0:26-CV-1895

MEMORANDUM AND ORDER
GRANTING PETITION FOR WRIT
OF HABEAS CORPUS

The petitioner is a noncitizen currently detained by U.S. Immigration and Customs Enforcement. He seeks a writ of habeas corpus under 28 U.S.C. § 2241. Filing 1. He asserts his detention is unlawful because the government denied his due process rights. The Court will grant the petition.

## I. BACKGROUND

The petitioner is a citizen of Venezuela. He entered the United States and was inspected at the San Ysidro, California port of entry in October 2023. Filing 1 at 3. He was not taken into custody or arrested; rather, he was allowed into the United States on humanitarian parole, 8 U.S.C. § 1182(d)(5)(A), and placed in removal proceedings. He was issued a Notice to Appear at that time, for a hearing in April 2024. He attended that hearing, and applied for asylum in October 2024, when he received a work authorization. Filing 1 at 2. He has no criminal history and has shown up for all of his immigration proceedings.

But in December 2025, the petitioner was detained by three unidentified individuals in an unmarked car. He was taken to the Fort Whipple facility in Fort Snelling, Minnesota, and immediately transferred to the Sherburne

County Jail in Elk River, Minnesota. Filing 1 at 3. He asked to call his lawyer, but was never allowed to make that call. The petitioner was then told he was being transferred to Chicago, but, instead, he was taken to the Pine Prairie Detention Center in Pine Prairie, Louisiana. Filing 1 at 3.

An immigration judge then ordered the petitioner removed from the country. He appealed the decision, which is now before the Board of Immigration Appeals. Filing 1 at 3.

## II. DISCUSSION

### *Jurisdiction*

The government asserts that the Court lacks jurisdiction because the petitioner was in Louisiana when the petition was filed. Filing 7 at 3. The government relies on the general principle that the proper venue for a habeas petition is in the district of confinement. *E.g., Trump v. J.G.G.,* 604 U.S. 670, 672 (2025); *Rumsfeld v. Padilla,* 542 U.S. 426, 443 (2004). The Court questions whether that rule is jurisdictional, as the government claims. *See Padilla,* 542 U.S. at 451 (Kennedy, J., concurring). But regardless, it is the general rule.

However, courts have recognized an exception to this general rule where the government manipulates jurisdiction or impedes a petitioner's attorney's ability to identify the district of confinement. *E.g., Suri v. Trump,* 785 F. Supp. 3d 128, 144-45 (E.D. Va. 2025); *Ozturk v. Trump,* 777 F. Supp. 3d 26, 41-42 (D. Mass. 2025). These courts primarily rely on Justice Kennedy's concurrence in *Padilla*, joined by Justice O'Connor, recognizing that exceptions to the general rule may be warranted "to protect the integrity of the writ or the rights of the person detained." 542 U.S. at 454. Ultimately, the detainee in *Padilla* was not subject to Justice Kennedy's exception, given that the detainee's transport was not "designed to play games with forums" and there was "no indication that

the Government refused to tell Padilla's lawyer where he had been taken." *Id*. at 454-55; *accord Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000).

The situation here is different. While the petitioner's location was known at the time of filing, the petitioner alleges, and the government does not dispute, that he was denied any opportunity to contact his lawyer. Filing 1 at 7. The petitioner also alleges the government was not forthcoming about the city to which he would be transferred. Filing 1 at 7. The government asserts the petitioner's delay in filing his petition is dispositive. The Court is not persuaded.

This case implicates the sort of shell game that Justice Kennedy's concurrence cautioned against. Under these circumstances, the Court finds that the unknown custodian exception applies. See *Victor C.S. v. Bondi*, No. 26-cv-1366, Filing 8 (D. Minn. Feb. 16, 2026) (exception applied where government impeded petitioner's access to counsel and was not forthcoming with place of detention); *Adriana M.Y.M. v. Easterwood*, No. 26-CV-213, 2026 WL 184721, at *2-3 (D. Minn. Jan. 24, 2026); *Tah L. v. Trump*, No. 26-CV-171, 2026 WL 184524, at *4 (D. Minn. Jan. 19), report and recommendation adopted as modified, 2026 WL 184529 (D. Minn. Jan. 23, 2026).

### *Due Process*

The Court is obviously aware of the recent Eighth Circuit decision adopting the government's interpretation of 8 U.S.C. § 1225. *See Avila v. Bondi*, No. 25-3248 (8th Cir. Mar. 25, 2026). The Court is bound by that precedent, but the petitioner's claim raises other issues of law and fact.

*Avila* involved a noncitizen who entered the country "without inspection or admission." *Id*. But here, Border Patrol first encountered the petitioner in California as he was arriving from Venezuela. *See* filing 7-4 at 1. The government determined he was an "arriving alien," seeking admission to the

country. If the government was going to detain the petitioner for removal proceedings, that was the time. Instead, the government decided to release him—and when it did so, the petitioner's detention and removal were subject to the regulations in 8 C.F.R. § 212.5(e). *See Aldana v. Collins*, No. 26-cv-335, 2026 WL 673827, at *3 (W.D. Tex. Mar. 9, 2026); *cf. Y-Z L-H v. Bostock*, 792 F. Supp. 3d 1123, 1132-33 (D. Ore. 2025).

There's no indication that the government revoked the petitioner's humanitarian parole. The government does not contest that the petitioner was paroled under § 1182(d)(5)(A), and there's no indication that the petitioner's parole expired at any point. Pursuant to § 212.5(e), humanitarian parole terminates either (1) without written notice at the time it expires or upon the noncitizen's departure from the United States, or (2) with written notice "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [certain DHS officials] neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." In that case, after the written notice to the noncitizen, "he or she shall be restored to the status that he or she had at the time of parole." § 212.5(e)(2)(i).

Several courts have determined that detaining a noncitizen with a valid grant of parole is unlawful. *E.g., Aldana*, 2026 WL 673827, at *4 (collecting W.D. Tex. cases); *Kudyrkulov v. Martin*, No. 6:26-cv-3035, 2026 WL 312120, at *3 (W.D. Mo. Feb. 5, 2026). There's no evidence that the government revoked the petitioner's parole, that the petitioner left the United States, or that his parole expired. He was not provided written notice regarding his parole status before he was detained, placed in front of an immigration judge, and ordered removed.

The government's conduct offends the very core of due process. The petitioner is not subject to detention under any statute, let alone § 1225. The

government is required to follow its own regulations. *See United States v. Lee, 274 F.3d 485, 492 (8th Cir. 2001)* (administrative agencies are barred from taking action inconsistent with their internal regulations when it would affect individual rights (citing *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954))).

Because the Court finds that the petitioner's grant of humanitarian parole was still valid when he was detained in December 2025, the Court finds his detention is unlawful. While the government has provided a warrant for the petitioner's arrest, *see* filing 7-3, that warrant is invalid in the face of the petitioner's unrevoked parole status. *See* § 215(e). Under these circumstances, the appropriate relief is immediate release. Accordingly,

IT IS ORDERED:

1. The Petition for Writ of Habeas Corpus (filing 1) is granted.

2. The government's motion to dismiss or transfer (filing 6) is denied.

3. The government shall immediately return the petitioner to the District of Minnesota.

4. When the petitioner is in Minnesota, the government shall immediately release the petitioner from custody with no new conditions, and shall return any personal property seized from the petitioner when detained.

5.      No later than **March 30, 2026**, the government shall file a
        status report certifying compliance with this Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated this 25th day of March, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge